**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| In re: Subpoenas served on Non-Party JPMorgan Chase Bank, N.A. dated March 20, 2023 | Civil Misc. No. 2023-mc-_____ |
| Mohamad Aboukhodr,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Does 1-10,<br><br>　　　　　Defendants. | Case No. 2:23-cv-10395-GCS-EAS (E.D. Mich.) |

**NON-PARTY JPMORGAN CHASE BANK, N.A.'S
<u>MOTION TO QUASH RULE 45 SUBPOENAS</u>**

Pursuant to Rules 26, 30(b), 34, and 45(d)(3) of the Federal Rules of Civil Procedure, non-party JPMorgan Chase Bank, N.A. ("Chase") hereby respectfully moves this Court for an order quashing the Subpoenas issued on March 20, 2023, to Chase by Mohamad Aboukhodr, the plaintiff in the above-referenced action proceeding in the United States District Court for the Eastern District of Michigan. As further relief, Chase requests that this Court award it reasonable attorneys' fees and costs incurred in connection with this Motion. This Motion is based on all the files, records, and proceedings herein, as well as the attached memorandum of law and supporting documents filed herewith.

- 2 -

Dated:  April 28, 2023

Respectfully submitted,

*/s/ Andrew H. King*
Andrew H. King (#0092539)
SQUIRE PATTON BOGGS
2000 Huntington Center
41 South High Street
Columbus, OH 43215
Telephone: (614) 365-2843
Facsimile: (614) 365-2499
andrew.king@squirepb.com

Todd A. Noteboom (motion for *pro hac vice* forthcoming)
Andrew P. Leiendecker (motion for *pro hac vice* forthcoming)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
todd.noteboom@stinson.com
andrew.leiendecker@stinson.com

*Counsel for Non-Party JPMorgan Chase Bank, N.A.*

## NON-PARTY JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH RULE 45 SUBPOENAS

**I.     INTRODUCTION**

JPMorgan Chase Bank, N.A. ("Chase") brings this motion as a miscellaneous matter in this Court to quash two subpoenas issued by Mohamad Aboukhodr, the plaintiff in the above-referenced litigation venued in the United States District Court for the Eastern District of Michigan.  Aboukhodr's challenged subpoenas for documents and deposition testimony have been served in violation of the Eastern District of Michigan court's order defining the limited scope of early discovery that Aboukhodr may seek from Chase, and are thus improper under Federal Rules of Civil Procedure 26, 30, 34, and 45.

In February 2023, Mohamad Aboukhodr filed a lawsuit against Doe Defendants in the Eastern District of Michigan, asserting the Defendants are credit reporting agencies that furnished false information to non-party Chase, resulting in Chase temporarily closing Aboukhodr's accounts.  The Eastern District of Michigan court authorized Aboukhodr to seek narrow and limited early discovery from Chase: "Plaintiff may serve a subpoena on [Chase] limited to obtaining the identities of the Doe defendants."  But instead of serving an appropriately tailored document subpoena on Chase, Aboukhodr served two subpoenas—a document and a deposition subpoena—seeking documents and information far beyond that which would be necessary to "obtain[] the identities of the Doe defendants."

Chase objected to the scope of these subpoenas, and in an effort to avoid a dispute, Chase volunteered the information the Eastern District of Michigan court authorized Aboukhodr to obtain, telling Aboukhodr that "[n]o credit reporting agency provided information to Chase that led to the temporary closure of Mr. Aboukhodr's accounts."  Aboukhodr asserted this answer was insufficient, so Chase offered to formally respond to an appropriately narrowed document

subpoena if Aboukhodr withdrew the pending overbroad subpoenas. Aboukhodr rejected this offer, and insisted Chase respond to the document subpoena and prepare a corporate representative for a Rule 30(b)(6) deposition. This Court should issue an order quashing Aboukhodr's two subpoenas to Chase because they seek early discovery well beyond that authorized by the Eastern District of Michigan court.

## II. BACKGROUND

### 1. In October 2021, Aboukhodr files an action against Chase stemming from the closure of his Chase accounts.

On October 22, 2021, Aboukhodr filed a putative class action complaint against Chase, captioned *Aboukhodr v. JP Morgan Chase Bank, N.A.*, Case No. 2:21-cv-12496 (E.D. Mich.), asserting Chase violated the Federal Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA"), when it closed his credit accounts. *See* Declaration of Andrew P. Leiendecker ("Leiendecker Decl."), Ex. A ¶¶ 1–3 (attached hereto as Exhibit 1). Specifically, Aboukhodr asserted Chase sent him a notice in August 2021, informing him that his accounts would be closed in September 2021, and that this action violated the ECOA. *Id.* ¶¶ 25–28, 47. On December 7, 2021, Aboukhodr filed a notice that the parties "settled all claims between them." *Id.*, Ex. B. On January 3, 2022, pursuant to Federal Rule of Civil Procedure 41, Aboukhodr's action was dismissed with prejudice. *See id.*, Ex. C.

### 2. In February 2023, Aboukhodr commences an action against Doe Defendants in the Eastern District of Michigan, and the court grants his request to seek limited early discovery from Chase.

On February 14, 2023, Aboukhodr filed an action in the Eastern District of Michigan, captioned *Aboukhodr v. Does 1-10*, Case No. 2:23-cv-10395 (E.D. Mich.), asserting Doe Defendants—unidentified "consumer reporting agencies"—violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"). Leiendecker Decl., Ex. D ¶¶ 1, 8. This action appears related

- 4 -

to Aboukhodr's October 2021 now-dismissed case against Chase. Specifically, Aboukhodr contends the Doe Defendants "regularly provide[] JP Morgan Chase Bank . . . and/or its affiliated companies consumer reports on individuals, such as Plaintiff, so that Chase may make decisions whether to extend, or continue to extend, credit to such individuals." *Id.* ¶ 12. He also contends, in conclusory fashion, that "[s]ometime prior to August 13, 2021, Defendants had reported inaccurate information about [him] to Chase, that led Chase to believe that continuing to do business with [him] was a reputation risk." *Id.* ¶ 52. Aboukhodr alleges such information was false—he "has no criminal record," "has never been arrested," and "never missed a payment with Chase or any other creditor on any of his credit accounts"—and the purported report was the result of the Doe Defendants "willfully and/or negligently fail[ing] to follow reasonable procedures." *Id.* ¶ 56.

Aboukhodr also alleges he "attempted to learn the identity of Defendants Does 1-10 from Chase prior to filing this lawsuit, [but] Chase refused to provide any information about Defendants['] identit[ies] and/or the consumer file it [purportedly] received about [Aboukhodr] containing inaccurate information." *Id.* ¶ 57. This purported information, Aboukhodr contended, is needed "to clear his good name through the FCRA's dispute process." *Id.* ¶ 58. Accordingly, on the same day he filed his action, Aboukhodr brought a motion "to permit [him] to conduct early discovery prior to the Rule 26(f) conference." Leiendecker Decl., Ex. E at 1. Aboukhodr explained this motion was "for the ***limited*** purposes of obtaining the identity of Defendants Does 1-10" from Chase. *Id.* (emphasis added). Throughout the motion, Aboukhodr reiterated the narrow scope of his requested early discovery. *See, e.g.*, *id.* at 2 (explaining his discovery requests would be limited "for purposes of obtaining Defendant DOES 1-10 true identity"); *id.* at 3 (requesting "limited discovery . . . to obtain the identities of the Doe Defendants"); *id.* at 6

(explaining his discovery requests would be limited to "ascertain[ing] the identities of the Doe Defendants"); *id.* at 9 ("Plaintiff is seeking early discovery . . . for the limited purposes of obtaining the identity of the Doe Defendants.").

The Eastern District of Michigan court granted Aboukhodr's motion, authorizing him to "serve *a* subpoena on third party JP Morgan Chase, N.A., *limited to obtaining the identities of the Doe defendants*." Leiendecker Decl., Ex. F at 1–2 (emphasis added).

### 3. Aboukhodr serves document and deposition subpoenas on Chase that exceed the scope of the Court's order regarding early discovery.

Despite being authorized to serve only a single subpoena on Chase limited to "obtaining the identities of the Doe defendants," on March 20, 2023, Aboukhodr served two broad subpoenas on Chase.

***First***, Aboukhodr served a "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action." *See* Leiendecker Decl., Ex. G. This subpoena demanded Chase produce five categories of documents:

1. "Any and all documents, information, data and/or reports, whether they presently exist in usable form or must be generated, containing any information about Aboukhodr, including information on his credit worthiness, credit standing, credit capacity, reputation, personal characteristics, criminal history, etc."

2. "All information furnished to [Chase] by any credit reporting agency and/or entity that resulted in [Chase] taking action to close Aboukhodr's Accounts in or around September 2021."

3. "All communications between [Chase] and any credit reporting agency and/or entity, including any agreement, contract, memorandum of understanding, or other document, that was the basis for information transmitted to [Chase] that resulted in the closure of Aboukhodr's Accounts in or around September 2021."

4. "Any and all information, documentation, and/or communications about Aboukhodr's reputation, personal characteristics, criminal history, etc. gathered by [Chase] or provided to [Chase] that resulted

      in the closure of Aboukhodr's Accounts in or around September 2021."

  5. "Any and all information regarding what entity provided [Chase] information that Aboukhodr may have been charged with a financial crime, which resulted in [Chase's] closure of Aboukhodr's Accounts in or around September 2021."

*Id.* at 5–8. By agreement, the return date for the subpoena was extended to May 1, 2023. *See* Leiendecker Decl., Ex. I at 6.

 ***Second***, Aboukhodr served a "Subpoena to Testify at a Deposition in a Civil Action." *See* Leiendecker Decl., Ex. H. This subpoena demanded Chase appear for a Rule 30(b)(6) deposition to testify on four topics:

  1. "The Chase employee(s) with knowledge of the identity of the credit reporting agency(ies) and/or entity that provided a consumer report, as defined by 15 U.S.C. § 1681a(d), or any information about [Aboukhodr], that was relied upon, used and/or otherwise considered by Chase in making the decision to close [Aboukhodr]'s accounts in or around August 2021."

  2. "The Chase employee(s) with knowledge of the documents produced by Chase in response to [Aboukhodr]'s subpoena."

  3. "The Chase employee(s) with knowledge on how [Aboukhodr]'s credit information and/or any information regarding [Aboukhodr] was transmitted between the credit reporting agency(ies) and/or entity and Chase, which was the basis for Chase's decision to close [Aboukhodr]'s accounts."

  4. "The Chase employee(s) with knowledge of the agreements between Chase and the credit reporting agency(ies) and/or entity that is the basis of the relationship in which the consumer reporting agency(ies) and/or entity that provides consumer/customer information, including [Aboukhodr]'s, to Chase."

*Id.* at 6–8.[1] Although the deposition was originally noticed for May 1, 2023, the parties agreed to reschedule the deposition to May 9, 2023, and they also agreed that "should Chase file a motion

---

[1] The proposed deposition topics are ambiguous as to whether Chase is being asked to: (1) prepare a witness to testify as to the "identity" of the "Chase employee(s)" described in each topic; or

- 7 -

to quash . . . with respect to the subpoenas, the deposition will be off calendar until the Court makes a ruling." *See* Leiendecker Decl., Ex. I at 6.

### 4. Chase provides Aboukhodr with the information authorized by the Eastern District of Michigan court's order, but Aboukhodr refuses to withdraw the subpoenas.

On April 6, 2023, Chase objected to the scope of Aboukhodr's subpoenas, explaining they were "overly broad, unduly burdensome, and improper" because "[t]he document requests and deposition topics . . . go far beyond ascertaining 'the ***identities*** of the Doe defendants.'" Leiendecker Decl., Ex. I at 13. But Chase proposed to "send [Aboukhodr] a list naming any and all consumer reporting agencies that furnished information to Chase leading to the temporary closing of [his] accounts" if he withdrew the pending subpoenas. *Id.* at 14.

On April 10, Chase did just that, with counsel explaining "Chase has reviewed its records, and has confirmed that although several credit reporting agencies received information relating to Mr. Aboukhodr's accounts, none of these agencies provided any information to Chase that led to the temporary closure of his accounts." *Id.* at 11. Instead, Chase explained, the decision to temporarily close Aboukhodr's accounts "was made internally . . . following negative media coverage of a customer with a similar name, geographic location, and occupation" as Aboukhodr. *Id.* On April 13, counsel reiterated that "Chase has continued to investigate this issue," and had reconfirmed "[n]o credit reporting agency provided information to Chase that led to the temporary closure of Mr. Aboukhodr's accounts." *Id.* at 9. In another attempt to resolve the dispute without further expense or motion practice, Chase offered to "formally respond to a document subpoena if: (1) Mr. Aboukhodr withdraws the pending document and deposition subpoenas; and (2) Mr.

---

(2) designate the "Chase employee(s)" with knowledge to testify as to each topic. Chase assumes the proposed topics seek the latter, but in either case, the topics exceed the scope of discovery authorized by the Eastern District of Michigan court's order.

- 8 -

Aboukhodr serves a revised document subpoena that is properly narrowed to be consistent with the limited scope of discovery authorized by the Eastern District of Michigan court's order, requesting only that Chase produce documents sufficient to identify the credit reporting agency, if any, that provided Chase inaccurate information about Mr. Aboukhodr resulting in the temporary closure of his Chase accounts." *Id.*  To avoid contributing to any delay, Chase offered to "respond to such a revised subject within 14 days of service." *Id.*

On April 24, Aboukhodr rejected Chase's compromise offer, and informally offered to narrow the scope of just one of his document requests. *Id.* at 4. Aboukhodr did not offer to narrow or strike any other aspect the pending subpoenas, and asked Chase to again confirm that no entity meeting the statutory definition of "credit reporting agency" provided information to Chase relating to the temporary closure of his accounts.  Chase reiterated its offer to "respond within 14 days to an appropriately tailored document subpoena that seeks information authorized by the Eastern District of Michigan court's order: 'the identities of the Doe defendants,' if any exist." *Id.* at 3. Chase also emphasized that its compromise offer "will avoid motion practice, will save both parties time and expense, and will give Mr. Aboukhodr all of the information he is entitled to receive." *Id.*  On April 25, Chase informed Aboukhodr for a ***third*** time that the decision to temporarily close Mr. Aboukhodr's accounts was internal: "Chase's records show that no third party, whether it be a CRA or otherwise, provided any information to Chase relating to the decision to temporarily close Mr. Aboukhodr's accounts." *Id.* at 2.  Chase once again offered "to memorialize this in writing if [Aboukhodr] serves an appropriately tailored document subpoena," and explained that if Aboukhodr did not accept this offer, it would proceed with filing the present motion to quash. *Id.* Aboukhodr again rejected Chase's offer. *Id.* at 2–3.

**III.    ARGUMENT**

    **1.    Aboukhodr's document and deposition subpoenas should be quashed because they exceed the scope of early discovery authorized by the Eastern District of Michigan court.**

Under Rule 45(d) of the Federal Rules of Civil Procedure, "on timely motion, the court for the district where compliance is required" may quash or modify an improper subpoena. Fed. R. Civ. P. 45(d)(3); *see also Hogan v. Cleveland Ave Rest. Inc.*, 2016 WL 7467968, at *1 (S.D. Ohio Dec. 28, 2016) ("[T]o be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena."). Courts should grant a motion to quash a Rule 45 subpoena if, among other things, the subpoena imposes an undue burden, is "overly broad," or "seek[s] irrelevant information under the . . . standards set forth in Rule 26(b) and [Rule] 34." *Black v. Kyle-Reno*, 2014 WL 667788, at *2 (S.D. Ohio Feb. 20, 2014); Fed. R. Civ. P. 45(d)(3); *see also, e.g.*, *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253–56 (S.D. Ohio 2011) (granting motion to quash Rule 45 subpoenas on relevancy and/or "overbreadth" grounds, and instructing requesting party to "draft a far more narrow set of subpoenas").

As a general rule, it is improper to serve Rule 45 subpoenas—or, indeed, any discovery—before a Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1); *see also, e.g.*, *Weaver v. R & L Carriers Inc.*, 2013 WL 595196, at *1 (E.D. Tenn. Feb. 15, 2013) (granting motion to quash Rule 45 subpoena for being "premature" where it was served before the parties "file[d] a report of their Rule 26(f) meeting"). The only relevant exception is if the court expressly authorizes early discovery. *See* Fed. R. Civ. P. 26(d)(1). And where early discovery is authorized, the requesting party must ensure its early discovery is properly tailored to stay within the scope of the court's order. *E.g.*, *Montgomery v. Wellpath Med.*, 2021 WL 4773097, at *3 (M.D. Tenn. Oct. 13, 2021) (denying motion to compel to the extent plaintiff's interrogatories "exceed[] the scope of the Court's [early discovery] order"); *Sanders v. Rodriguez*, 2019 WL 3059217, at *1–2 (C.D. Cal.

Apr. 12, 2019) (denying motion to compel where the plaintiff's RFPs "exceeded the scope of the early discovery authorized by the Court, which was limited to the identities of the Doe Defendants named in the First Amended Complaint"). Where a subpoena exceeds the appropriate scope of discovery, the subpoena should be quashed, with the requesting party required to prepare and serve an appropriately tailored subpoena. *E.g.*, *Hendricks*, 275 F.R.D. at 256; *Richards v. Convergys Corp.*, 2007 WL 474012, at *4 (D. Utah Feb. 7, 2007).

Aboukhodr's document and deposition subpoenas are not properly tailored to comply with the Eastern District of Michigan court's order regarding early discovery. Moreover, despite the court's command that Aboukhodr serve a single subpoena on Chase, he has served *two* subpoenas, one of which is a burdensome deposition subpoena. The subpoenas inarguably seek information well beyond "the identities of the Doe defendants." Leiendecker Decl., Ex. F at 2. For example, Aboukhodr's document subpoena broadly seeks "[a]ny and all documents . . . containing ***any information about Aboukhodr***," as well as "[a]ny and all information . . . about Aboukhodr's reputation, personal characteristics, criminal history, etc. gathered by [Chase] or provided to [Chase]" by any source. Leiendecker Decl., Ex. G at 8. Neither of these requests is targeted towards obtaining the identity of a credit reporting agency, which is the ***only*** discovery permitted under the Eastern District of Michigan court's order. Instead, the requests broadly seek any and all information in Chase's possession regarding Aboukhodr. This untimely fishing expedition of a non-party should not be countenanced, and is plainly barred by the court's narrow order. Likewise—even setting aside that Aboukhodr was not authorized to serve both a document ***and*** a deposition subpoena—the deposition subpoena broadly seeks testimony regarding, among other things, "agreements between Chase and the credit reporting agency(ies) . . . that provide[] consumer/customer information" to Chase. Leiendecker Decl., Ex. H at 7–8. Like the document

subpoena, the deposition subpoena appears to be a fishing expedition to obtain Chase documents regarding internal operations and business relationships unrelated to Aboukhodr, and is not limited to seeking information *necessary* to obtain the identity of any purported Doe Defendant. Because the subpoenas seek documents and information far beyond what is necessary to determine "the identities of the Doe defendants," the subpoenas are overly broad and should be quashed. *E.g.*, *Muhammad v. L.A. Cnty. Met. Trans. Auth.*, 2020 WL 12772036, at *2–3 (C.D. Cal. June 5, 2020) (denying request for early discovery to the extent "the documents that Plaintiff seeks from the [non-party] greatly exceed the information necessary to disclose the identity of Jane Doe").

Indeed, the *only* subject in either subpoena that appears somewhat tailored to the Eastern District of Michigan court's order is the document subpoena's Request No. 5: "Any and all information regarding what entity provided [Chase] information that Aboukhodr may have been charged with a financial crime, which resulted in [Chase's] closure of Aboukhodr's Accounts in or around September 2021." Leiendecker Decl., Ex. G at 8. Chase has already explained to Aboukhodr that it has no documents responsive to this request because "none of these agencies provided any information to Chase that led to the temporary closure of his accounts." Leiendecker Decl., Ex. I at 11; *see also id.* at 2 (reiterating "Chase's records show that no third party, whether it be a CRA or otherwise, provided any information to Chase relating to the decision to temporarily close Mr. Aboukhodr's accounts").

Because the scope of subpoenas served on Chase greatly exceed the scope of early discovery authorized by the Eastern District of Michigan court (they are overly broad, seek irrelevant and improper information, and impose an undue burden on Chase), the subpoenas should be quashed. *E.g.*, *Montgomery*, 2021 WL 4773097, at *3; *Muhammad*, 2020 WL 12772036, at *2–3; *Sanders*, 2019 WL 3059217, at *1–2.

### 2. This Court should award costs to Chase for the expenses and attorneys' fees incurred in bringing this motion.

Rule 45 also "directs district courts to 'impose an appropriate sanction—which may include . . . reasonable attorney's fees—on a party or attorney who fails to comply' with the Rule's mandate to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.'" *Fusion Elite All Stars v. Nfinity Athletic LLC*, 2022 WL 18283187, at *4 (W.D. Tenn. Dec. 12, 2022) (quoting Fed. R. Civ. P. 45(d)(1)); *see also, e.g.*, *Linglong Ams. Inc. v. Horizon Tire, Inc.*, 2018 WL 1631341, at *3 (N.D. Ohio Apr. 4, 2018) ("Rule 45(d)(1) . . . gives this Court discretion to protect a non-party from costs resulting from a subpoena by awarding reasonable attorney's fees incurred litigating the subpoena."); *XTO Energy, Inc. v. ATD, LLC*, 2016 WL 1730101, at *32–33 (D.N.M. Apr. 1, 2016) (awarding costs and fees where requesting party "did not negotiate reasonable parameters on the Subpoena," and their "refusal to withdraw or modify its defective subpoena caused [the recipient] to incur the expense of filing [a] Motion to Quash"); *accord Libertarian Party of Ohio v. Husted*, 2017 WL 2544084, at *4–5 (S.D. Ohio June 12, 2017). It is appropriate to award attorneys' fees incurred litigating a subpoena where, among other things, the party issuing the subpoena "has demonstrated a disregard for Rule 45's duty of due diligence and restraint" or has "improperly issu[ed] [a] subpoena [and] refused to withdraw it, requiring the non-party to institute a motion to quash." *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp.*, 2010 WL 2219343, at *11–12 (E.D.N.Y. Feb. 5, 2010); *Night Hawk Ltd. v. Briarpatch Ltd.*, 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 23, 2003).

Here, it is appropriate to award Chase the reasonable attorneys' fees and expenses incurred bringing this motion. Indeed, Chase spent nearly a month negotiating the proper scope of the subpoenas with Aboukhodr via email and teleconference. *Supra* pp. 8–9. Chase already provided Aboukhodr the precise information he is authorized to obtain by the Eastern District of Michigan

court. *Supra id.* And recognizing Aboukhodr was not satisfied by Chase's counsel's representation that "[n]o credit reporting agency provided information to Chase that led to the temporary closure of Mr. Aboukhodr's accounts," Chase offered to formally respond to an appropriately tailored document subpoena. *Supra id.* Aboukhodr refused all of these compromise efforts. This refusal demonstrates a lack of "due diligence and restraint" in light of the unambiguous language in the Eastern District of Michigan court's order. In fact, there is no plausible basis for contending the two issued subpoenas are consistent with the order's instruction that Aboukhodr may only "serve *a* subpoena on [Chase] *limited to obtaining the identities of the Doe defendants*." Leiendecker Decl., Ex. F at 1–2 (emphasis added). Accordingly, it is proper and just to award Chase its fees relating to bringing this motion.

## IV. CONCLUSION

For the foregoing reasons, Chase respectfully requests that this Court grant Chase's motion to quash, and award Chase the expenses, including attorneys' fees, incurred in connection with this motion.

- 15 -

| | |
|---|---|
| Dated: April 28, 2023 | Respectfully submitted,<br><br>*/s/ Andrew H. King*<br>Andrew H. King (#0092539)<br>SQUIRE PATTON BOGGS<br>2000 Huntington Center<br>41 South High Street<br>Columbus, OH 43215<br>Telephone: (614) 365-2843<br>Facsimile: (614) 365-2499<br>andrew.king@squirepb.com<br><br>Todd A. Noteboom (motion for *pro hac vice* forthcoming)<br>Andrew P. Leiendecker (motion for *pro hac vice* forthcoming)<br>STINSON LLP<br>50 South Sixth Street, Suite 2600<br>Minneapolis, MN 55402<br>Telephone: (612) 335-1500<br>Facsimile: (612) 335-1657<br>todd.noteboom@stinson.com<br>andrew.leiendecker@stinson.com<br><br>*Counsel for Non-Party JPMorgan Chase Bank, N.A.* |

- 16 -

## CERTIFICATE OF SERVICE

      I hereby certify that on April 28, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and that, pursuant to a written agreement with Mohamad Aboukhodr's counsel, Mohamad Aboukhodr was served by Certified U.S. mail and email transmittal to his counsel, Youssef H. Hammoud, 3744 E. Chapman Ave., #F12269, Orange, CA 92859, yh@lawhammoud.com.

                                      */s/ Andrew H. King*
                                      Andrew H. King